UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| CODY A. CABO, | NO: 2:14-CV-0378-TOR |
|---|---|
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 12, 13). The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

///

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Garrison*

*v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) ("Where the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the ALJ." (internal quotation marks and brackets omitted)). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1117 (internal quotation marks and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the

analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

Plaintiff filed an application for supplemental security income on July 6, 2011,[1] alleging a disability onset date of January 19, 2011. Tr. 234-40. This application was denied initially and upon reconsideration, and Plaintiff requested a hearing. Tr.150-53, 162-64, 169-71. A hearing was held before an Administrative Law Judge ("ALJ") on May 1, 2013. Tr. 39-71. The ALJ rendered a decision denying Plaintiff benefits on June 24, 2013. Tr. 18-38.

---

[1] Plaintiff also protectively filed an application for child's insurance benefits on August 23, 2010; however, the ALJ found Plaintiff ineligible for child's insurance benefits based on his age. Tr. 23. Plaintiff does not challenge this denial of benefits.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 19, 2011, the alleged onset date. Tr. 23. At step two, the ALJ found that Plaintiff had the following severe impairments: substance abuse disorder, substance induced psychosis, mood disorder, and antisocial personality disorder. Tr. 24. At step three, the ALJ found that Plaintiff's impairments, including substance use disorder, met sections 12.03, 12.04, 12.08, and 12.09 of 20 C.F.R. 404, Subpart P, Appendix, which would direct a finding of disabled. Tr. 24-26. However, because the ALJ found substance abuse to be a contributing factor material to the determination of disability, the ALJ proceeded to determine whether Plaintiff's physical and mental limitations would remain if he stopped abusing. Tr. 26. During this second look, the ALJ found that if Plaintiff stopped the substance abuse, he would not have an impairment or combination of impairments that meet or medically equal a listed impairment. Tr. 26. The ALJ then determined that if Plaintiff stopped the substance abuse, he would have the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant would be capable of simple routine tasks with minimal to no contact with the general public, and a degree of supervision that would not be hovering, not even dealing with a supervisor on an occasional basis, but a more independent performance of work duty.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

Tr. 27. At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 31. At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that if Plaintiff stopped the substance abuse, he could perform the representative occupations of dishwasher, laundry worker II, and industrial cleaner. Tr. 31-32. The ALJ concluded that Plaintiff's substance use disorder was a contributing factor material to the determination of disability because the Plaintiff would not be disabled if he stopped the substance abuse. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act and denied his claim on that basis. Tr. 32.

The Appeals Council denied Plaintiff's request for review on November 7, 2014, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Tr. 1-6; 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income under Title XVI of the Social Security Act. Plaintiff raises the following three issues for review:

    (1) Whether the ALJ properly conducted a step two analysis;

    (2) Whether the ALJ properly weighed the opinion of testifying medical expert Dr. Layton; and

(3) Whether the ALJ presented a complete hypothetical to the vocational expert.

ECF No. 12. This Court addresses each issue in turn.

**DISCUSSION**

**A.  Step Two Analysis**

The step two inquiry is merely a *de minimis* screening device intended to dispose of groundless claims. *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001). It does not result in a finding of disability if a particular impairment is found to be "severe" within the meaning of the Commissioner's regulations. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

An impairment, to be considered severe, must significantly limit an individual's ability to perform basic work activities. 20 C.F.R. § 416.920(c); SSR 96-3P, 1996 WL 374181; *see Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Basic work activities include "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 416.921(b). An impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (citing SSR 96-4p, 1996 WL 374187 (July 2, 1996)) (defining

1  "symptoms" as an "individual's own perception or description of the impact of"

2  the impairment). Plaintiff bears the burden of proving that his medically

3  determinable impairment or its symptoms affect his ability to perform basic work

4  activities. *Edlund*, 253 F.3d at 1159-60.

5      Plaintiff contends the ALJ erred in her step two analysis when she failed to

6  find Plaintiff's alleged learning disabilities, Irlen Syndrome, and antisocial

7  personality disorder to be severe. ECF No.12 at 12-14. In turn, Plaintiff asserts

8  that this failure to classify these limitations as severe at step two resulted in an

9  inaccurate RFC. *Id.* at 14.

10     This Court finds the ALJ's severe impairment analysis at step two was not

11 flawed. At step two, the ALJ found Plaintiff suffered from the following severe

12 impairments: substance abuse disorder, substance induced psychosis, mood

13 disorder, and antisocial personality disorder. Tr. 24. Thus, Plaintiff's claim

14 proceeded past the initial *de minimis* screening at step two. Even if the ALJ had

15 found Plaintiff's Irlen Syndrome and learning disabilities to also be severe

16 impairments, such a conclusion would not have resulted in a finding of disability at

17 step two.

18     In any event, there was no error in the ALJ's analysis. Regarding Plaintiff's

19 alleged Irlen Syndrome, Plaintiff's diagnosis came from Plaintiff's school records.

20 Tr. 355-56, 379. Thus, without medical acceptable evidence to corroborate

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

Plaintiff's alleged condition, the ALJ properly concluded that Plaintiff did not meet his burden to show a severe impairment. Tr. 24; *see Ukolov*, 420 F.3d at 1005.

Regarding Plaintiff's learning disabilities, the ALJ noted that this impairment was diagnosed by E. Clay Jorgensen, Ph.D. and that school records demonstrated Plaintiff had received special education services; however, the record evidence did not establish a medically determinable impairment. Tr. 24. For instance, Jay Toews, Ed.D., although he similarly found claimant's intelligence in the "extremely low range," opined that a true picture of Plaintiff's cognitive functioning could not be obtained unless the Plaintiff had been clean and sober for at least twelve months. Tr. 493 (noting that Plaintiff appeared to be slightly intoxicated at the evaluation). Additionally, medical expert Kent Layton, Psy.D., testified that such standardized intelligence testing is unreliable in cases such as Plaintiff's where schooling was limited. Tr. 48. Finally, even considering Dr. Jorgensen's examination in isolation—which examination was conducted for purposes of determining competency issues in legal proceedings—the report does not state that Plaintiff's learning disability would significantly limit his physical ability to do basic work activities. *See* 20 C.F.R. § 416.920(c). Accordingly, the ALJ did not err in declining to designate Plaintiff's learning disabilities as a severe impairment.

1    Although Plaintiff asserts that the ALJ's step two analysis resulted in an
2 improper RFC, this Court disagrees.  While it is true the ALJ did not classify
3 Plaintiff's learning disabilities or Irlen Syndrome as severe, the ALJ considered
4 evidence regarding Plaintiff's cognitive limitations and ultimately found Plaintiff
5 should be limited to "simple routine tasks." Tr. 27.  The evidence does not support
6 a greater effect on Plaintiff's ability to work.  Indeed, the only limitation Plaintiff
7 identifies—that he is capable of only simple, routine tasks as opined by Dr.
8 Layton, ECF No. 12 at 13—is precisely the limitation ultimately included in the
9 RFC.  Thus, any error in the ALJ's analysis was harmless. *Molina*, 674 F.3d at
10 1115.

   **B.    Medical Opinion Evidence**

12   There are three types of physicians: "(1) those who treat the claimant
13 (treating physicians); (2) those who examine but do not treat the claimant
14 (examining physicians); and (3) those who neither examine nor treat the claimant
15 [but who review the claimant's file] (nonexamining [or reviewing] physicians)."
16 *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).
17 A treating physician's opinions are generally entitled to substantial weight in social
18 security proceedings.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228
19 (9th Cir. 2009).  If a treating or examining physician's opinion is uncontradicted,
20 an ALJ may reject it only by offering "clear and convincing reasons" that are

supported by substantial evidence in the record. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing "specific and legitimate reasons" that are supported by substantial evidence in the record. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d at 830-31 9th Cir. 1995)). A non-examining physician, on the other hand, is not entitled to such weight: "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012. "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13. That being said, the ALJ is not required to recite any magic words to properly reject a medical opinion. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (holding that the Court may draw reasonable

inferences when appropriate). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

Plaintiff contends the ALJ did not properly reject the opinion of Dr. Layton, the testifying medical expert. ECF No. 12 at 14. Specifically, Plaintiff faults the ALJ for not providing any convincing rationale for ignoring Dr. Layton's opinion that Plaintiff would have attention or absenteeism issues that would make a normal workday or week difficult. *Id.*

The ALJ gave "substantial weight" to the opinion of Dr. Layton that Plaintiff, in the absence of substance abuse, would be capable of simple repetitive tasks with minimal contact with others. Tr. 29. The ALJ found this opinion consistent with other medical and opinion evidence in the record, as well as Plaintiff's own statements regarding his daily activities. Tr. 29. With regards to Plaintiff's difficulty completely attending a regular workday or work week due to attention issues or absenteeism, the ALJ rejected this opinion as unsupported by the evidence as a whole and evidence regarding Plaintiff's functioning in particular. Tr. 30.

This Court finds that the ALJ properly evaluated the opinion of Dr. Layton. As a non-examining physician, Dr. Layton's opinions could be rejected by reference to specific evidence in the record. *See Sousa*, 143 F.3d at 1244. Plaintiff faults the ALJ for ignoring, without comment, Dr. Layton's opinion regarding Plaintiff's ability to attend a normal workday or workweek. The ALJ discussed this opinion, but incorrectly attributed it to Plaintiff's representative. *See* Tr. 30. Nonetheless, the ALJ properly rejected this opinion by citing to the record as a whole and specifically referenced evidence of claimant's functioning independent of substance abuse. Tr. 30. For instance, as discussed by the ALJ earlier in the opinion, Plaintiff's mental impairments appeared to improve when he stopped using. Tr. 28 (citing Tr. 526, 570); Tr. 29 (citing Tr. 906). The ALJ is neither required to recite the magic words, "I reject Dr. Layton's opinion because . . . ," nor is this Court deprived of making reasonable and legitimate inferences when reviewing the ALJ's findings. *See Magallanes*, 881 F.2d at 755. Moreover, it is worth noting that directly after Dr. Layton stated that Plaintiff would have difficulty five to fifteen percent of the time attending a normal workday or workweek without interference, he went on to opine that Plaintiff would be capable of simple and repetitive tasks, which opinion the ALJ gave substantial weight. Tr. 29; *see* Tr. 59-60. Accordingly, because the ALJ rejected Dr. Layton's opinion with reference to specific evidence in the record, this Court does not find error.

### C. Hypothetical Question Posed to Vocational Expert

"Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "Unless the record indicates that the ALJ had specific and legitimate reasons for disbelieving a claimant's testimony as to subjective limitations such as pain, those limitations must be included in the hypothetical in order for the vocational expert's testimony to have any evidentiary value." *Id.* at 423. "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984).

Plaintiff contends the hypothetical question posed to the vocational expert did not adequately express the full extent of his limitations. ECF No. 12 at 15. Plaintiff does not point to any specific limitation that was missing from the hypothetical. *See id.*

To the extent Plaintiff is asserting that his Irlen Syndrome, learning disorder, and absenteeism should have been included in the hypothetical, this argument is derivative of Plaintiff's arguments discussed in detail above. As previously noted by this Court, the ALJ properly excluded Plaintiff's claimed Irlen Syndrom and learning disorder from his medically determinable impairments and reasonable

rejected Dr. Layton's unsupported opinion regarding Plaintiff's expected attendance issues. Thus, because the ALJ included the full extent of credible limitations supported by the record in the hypothetical, this Court does not find error.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**.

The District Court Executive is directed to file this Order, enter **JUDGMENT** for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** September 10, 2015.

THOMAS O. RICE
United States District Judge